No. 52,535

KEITH W. COOK, *Appellee,* v. EULA A. COOK, *Appellant.*

(646 P.2d 464)

Opinion filed June 11, 1982.

*Jerry D. Fairbanks,* of Whalen, McGinley & Fairbanks, P.A., of Goodland, argued the cause and was on the brief for appellant.

*Floyd E. Jensen,* of Kite and Day, of St. Francis, argued the cause and was on the brief for appellee.

The opinion of the court was delivered by

MILLER, J.: This is a divorce case. The defendant, Eula A. Cook, appeals from the trial court's approval of a property settlement agreement. The matter was heard by a panel of the Court of Appeals and its opinion, reversing the trial court, appears as *Cook v. Cook,* 7 Kan. App. 2d 179, 638 P.2d 980 (1982). The issues are whether the trial court abused its discretion in approving the property settlement agreement entered into by the parties, whether noncompliance with Supreme Court Rule No. 164 (228 Kan. lxxx) is jurisdictional, and whether defendant's attorney fees were excessive. The Court of Appeals held that noncompliance with Rule 164 is not jurisdictional, but that the trial court abused

its discretion in approving the property settlement agreement and in approving the fees. We granted review.

The facts are set out in some detail in the opinion of the Court of Appeals, and those facts need not be restated at length here. The marriage of the parties lasted for thirty years, during which they accumulated substantial property including but not limited to two homes, over 4,000 acres of crop and pasture land in Kansas and Colorado, mineral interests, machinery, livestock, growing crops, feed, grain, credits and investments. Plaintiff filed a detailed and itemized list of these assets with the trial court, but did not estimate the value. It is agreed that no factual statement as required by Rule No. 164 was furnished to the trial court.

The parties, with the knowledge of their attorneys, engaged a third attorney, Mr. Milliken, to prepare a property settlement agreement. The parties went to his office and he prepared it at their direction. Both plaintiff and defendant signed it. Both asked the trial court to approve it.

Mr. Cook testified that the value of the property going to Mrs. Cook under the property settlement agreement was in the neighborhood of $850,000 to $900,000 and that it was clear and unencumbered. He estimated the value of the property going to him to be in the neighborhood of $2 million dollars, with indebtedness against that property of approximately $1 million dollars, all of which was to be assumed and paid by him. Mrs. Cook did not estimate the value of the property, and no other evidence of value was presented to the court.

The trial judge examined the agreement very carefully, and he conducted a lengthy examination of Mrs. Cook at the close of her testimony, as set forth in the Court of Appeals' opinion. The judge then said:

"[D]ivorces are sometimes emotional things and particularly where parties have been married for some thirty (30) years as in this case. I am going to grant the divorce to each party from the other on the grounds of incompatibility. Now, insofar as the property settlement agreement is concerned, I want to make some comments. I don't find from the evidence presented and from the questions that I asked both Mr. and Mrs. Cook any indication of actual duress or coercion in the signing of this property settlement agreement. I think the defendant is a competent person, I think that she understands the nature of the farming operation, she has been involved in it for some thirty (30) years and I think she is aware of the business as you would expect her to be. There are—in fact, I am saying that I feel both the plaintiff and the defendant understand the nature and extent of the property involved in this case. There are many factors which go into an agreement

and certainly I am probably not aware of all of those factors. Mrs. Cook referred to the fact that this case and its continuation was upsetting to her and certain members of her family, I'm sure that that is probably true, but I do feel that both parties entered into the agreement, which apparently was prepared by Mr. Milliken and, in fact, states that it was prepared by Mr. Milliken at the direction of the parties, and I feel that they knowingly and voluntarily entered into that property settlement agreement and that both parties have specifically asked me from the witness stand to approve the property settlement agreement today. And these two people are competent adults and they understand and know the nature of their property better than, I'm sure, either of the attorneys and certainly me, and so I'm going to approve the property settlement agreement as it is prepared and based on the questioning and taking into consideration the objection that Mr. Oglevie [defendant's attorney] has registered to the property settlement agreement. But those are the findings that I am going to make in this case in approving the property settlement agreement. Insofar as attorney's fees are concerned, apparently that's been discussed between the clients and counsel, there was no objection registered to that and the attorney's fees may be journalized in accordance with the property settlement agreement and included in the decree in accordance with the testimony entered concerning attorney's fees."

The principal issue is, of course, whether the trial judge abused his discretion in approving the property settlement agreement. K.S.A. 1981 Supp. 60-1610(*f*) [formerly K.S.A. 1610(*e*)] requires the trial judge to examine a property settlement agreement to determine whether it is "valid, just and equitable." If the trial court approves the agreement, then pursuant to the statute, the agreement is incorporated in and becomes a part of the final decree. See *In re Estate of Sweeney*, 210 Kan. 216, 223, 224, 500 P.2d 56 (1972).

Many cases have held that upon appeal, a trial court's division of the property in a divorce case will not be disturbed unless the division is such as to constitute a clear abuse of discretion. *McCain v. McCain*, 219 Kan. 780, 785, 549 P.2d 896 (1976); *Williams v. Williams*, 219 Kan. 303, 306, 548 P.2d 794 (1976); *Downing v. Downing*, 218 Kan. 549, 542 P.2d 709 (1976); *LaRue v. LaRue*, 216 Kan. 242, 531 P.2d 84 (1975); *Stayton v. Stayton*, 211 Kan. 560, Syl. ¶ 1, 506 P.2d 1172 (1973).

A trial court has the initial duty of examining a property settlement agreement to determine if it is "valid, just and equitable." Once the trial court has made this finding and has approved the agreement, at the request of both parties, then upon appellate review we are limited to a determination of whether the trial court's action in approving the agreement was a clear abuse of discretion. In *Lewis v. Lewis*, 4 Kan. App. 2d 165, 603 P.2d 650

(1979), the trial court had refused to approve an oral separation agreement, but had modified it in order to make it "valid, just and equitable." The modified agreement was then made a part of the final order, judgment and decree. The Court of Appeals, in reviewing the judgment, said:

"In conformance with the general rule of appellate review of a division of property . . . our review of the trial court's modification of a separation agreement made prior to its incorporation in the decree is limited to considering whether the modification constitutes an abuse of discretion." 4 Kan. App. 2d at 167.

The same standard of review is logically applicable to a trial court's approval of a proposed property settlement agreement.

We have discussed and defined abuse of judicial discretion many times in our opinions. In *Stayton v. Stayton,* 211 Kan. 560, 562, 506 P.2d 1172 (1973), a divorce case in which the appellant challenged the trial court's division of property as an abuse of discretion, we said:

"The discretion of the trial court is, of course, subject to appellate review and correction where there has been a clear-cut abuse of discretion. In its exercise a judge may not be arbitrary or whimsical. We have held on a number of occasions that abuse of judicial discretion, as that term is ordinarily used, implies not merely an error in judgment, but perversity of will, passion or moral delinquency when such discretion is exercised to an end or purpose not justified by, and clearly against, reason and evidence. (*Goodman v. Goodman,* 188 Kan. 41, 44, 360 P.2d 877.)

"In *Reedy v. Reedy,* 175 Kan. 438, 264 P.2d 913, we described judicial discretion in the following language:

'. . . Discretion may be defined as the freedom to act according to one's judgment. Judicial discretion implies the liberty to act as a judge should act, applying the rules and analogies of the law to the facts found after weighing and examining the evidence—to act upon fair judicial consideration, and not arbitrarily. When so acting in a matter committed to the discretion of the court by the law the judgment ought not to be overruled by a reviewing court, for to do so would be to deny the right to exercise the discretion given by the law itself . . .' (p. 440.)

"Judicial discretion is abused when judicial action is arbitrary, fanciful or unreasonable, which is another way of saying that discretion is abused only where no reasonable man would take the view adopted by the trial court. If reasonable men could differ as to the propriety of the action taken by the trial court then it cannot be said that the trial court abused its discretion. All judicial discretion may thus be considered as exercisable only within the bounds of reason and justice in the broader sense, and only to be abused when it plainly overpasses those bounds." 211 Kan. at 561-62.

The Court of Appeals found that there was no duress or

coercion, and we concur in that conclusion. The plaintiff, defendant's mother, her brother, and her children all urged defendant to get the matter settled. She made the appointment with the third attorney for the preparation of the agreement, she went to the office of that attorney in company with her husband, she was present during the preparation of the agreement, she signed it, and she asked the trial court to approve it. Though she was anxious to have the matter resolved, the record does not disclose that she was under duress or coercion.

The Court of Appeals found that the agreement "fails to include the parties' interest in a large acreage they worked as tenant farmers." We have reviewed both the inventory filed by the plaintiff some six or seven weeks prior to trial, as well as the property settlement agreement of the parties, and find that both enumerate some six farm leases, covering 2,839 acres of land which the parties leased from other persons. The property settlement agreement is twenty-three pages in length, is quite detailed, and specifically assigns the farm leases to the plaintiff.

The trial judge was very patient, careful, and thorough in discussing the proposed settlement agreement with the defendant, in order to make sure that she understood the agreement and her right to litigate the matter if she did not want the judge to approve it. At the conclusion of this lengthy exchange, she asked the judge for approval of the agreement. Viewing the record as a whole, we cannot say that the trial judge abused his discretion in approving the property settlement agreement.

The Court of Appeals found that noncompliance with Supreme Court Rule No. 164 (228 Kan. lxxx) was not jurisdictional, but that the rule mandates compliance by counsel, subject to the trial court's discretionary waiver. We agree. Though compliance with the rule is not mandatory, compliance is certainly the better and more preferable rule. The record in this case would be much clearer, had the rule been followed.

Finally, we turn to the matter of attorney fees. The property settlement agreement provides that "each of the parties hereto shall pay his or her own attorney fees but the amount of such fees shall be *subject to approval* by the Court and shall be included in the journal entry of judgment . . . ." (Emphasis supplied.) The trial court was thus called upon to approve the attorney fees, not to fix the attorney fees. The trial judge noted in his remarks

that fees had apparently been discussed previously by the parties and their attorneys, and there was no objection to the amount of the fees as stated. The amount of property involved was in the neighborhood of $3 million dollars; the case had been pending for about six months at the time of trial, and the court was aware of the matters presented prior to trial. Under all of the circumstances we cannot say that the trial court abused its discretion in approving the fees.

The judgment of the Court of Appeals is reversed, and the judgment of the trial court is affirmed.

HERD, J., not participating.